IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**ROOSEVELT PHILLIPS, JR.**                                                       **PETITIONER**

**V.**                             **NO. 4:22-CV-8-DMB-JMV**

**STATE OF MISSISSIPPI**                                                       **RESPONDENT**

**OPINION AND ORDER**

Roosevelt Phillips, Jr. filed a petition for a writ of habeas corpus challenging his state court convictions for armed robbery and aggravated assault. Because the claims raised in Phillips' petition are either procedurally barred or without merit, his petition will be denied.

**I**
**State and Federal Procedural History**

On December 9, 2015, in the Circuit Court of Coahoma County, Mississippi, Roosevelt Phillips, Jr. was named in a four-count indictment charging him with armed robbery (Count I); credit card fraud (Count II); aggravated assault (Count III); and attempted credit card fraud (Count IV). Doc. #11-1 at PageID 105–06. Phillips was initially tried by a jury November 13–14, 2017, and convicted on Counts II and IV.[1] *Id.* at PageID 156. However, because the jury "indicated to the Court they were unable to reach a unanimous decision on Count I & III," the trial court judge granted Phillips' motion for a mistrial as to those counts and ordered that the "matter should be placed back on the docket and may be heard as soon as all counsel are prepared for trial." *Id.* at PageID 157.

A year later, a second trial was held on Counts I and III. *Id.* at PageID 197. A jury convicted Phillips on both counts. *Id.* The trial court sentenced Phillips to prison terms of

---

[1] The trial court sentenced Phillips to serve separate terms of eleven months and twenty nine days in jail on both Counts II and IV, to be run consecutively. Doc. #11-1 at PageID 158–59. Phillips does not challenge these convictions or sentences in the present petition.

twenty years on Count I and five years on Count III, to run consecutively, followed by a five-year term of post-release supervision. *Id.* at PageID 198.

Phillips, through counsel, filed a direct appeal challenging his conviction and sentence on Counts I and III, arguing the trial court erred (1) when it denied his motion in limine to exclude the victim's identification of him; (2) by failing to set aside the verdict for legal insufficiency; and (3) by declining to grant a new trial based on the verdict being against the overwhelming weight of the evidence. Doc. # 11-7 at PageID 811 (citations omitted). The Mississippi Court of Appeals affirmed Phillips' armed robbery and aggravated assault convictions and sentences on April 28, 2020. *Phillips v. State*, 303 So. 3d 76 (Miss. Ct. App. 2020). In its opinion, the Mississippi Court of Appeals addressed all issues raised and found them all to be without merit. *See id.* It denied Phillips' motion for rehearing on August 4, 2020. Doc. #11-8 at PageID 904. Phillips' petition for certiorari review was denied by the Mississippi Supreme Court on September 22, 2020. *Id.*

On December 16, 2020, Phillips filed in the Mississippi Supreme Court a pro se "Application for Leave to Proceed in the Trial Court," along with a proposed "Motion for Post-Conviction Collateral Relief." Doc. #11-9 at PageID 1043–50. In his proposed motion, Phillips argued (1) the trial court erred by failing to grant his motion in limine to exclude the victim's in court identification of him; (2) the trial court erred by failing to set aside the jury's verdict for legal insufficiency; (3) the trial court erred in failing to grant his motion for a new trial based on the verdict being against the overwhelming wait of the evidence; and (4) "[t]he suggestive in court identification of the defendant by the victim should have triggered the two-step inquiry of *Neil v. Biggers*." *Id.* at PageID 1045. The Mississippi Supreme Court denied Phillips'

application for leave on February 10, 2021, finding he had raised the same arguments in the proposed motion on direct appeal. *Id.* at PageID 1041.

Phillips filed a second pro se "Application for Leave to Proceed in the Trial Court" and a proposed "Motion for Post-Conviction Collateral Relief" on August 9, 2021. *Id.* at PageID 997–1010. In the second proposed motion, Phillips asserted eight grounds for relief: (1) he was denied due process by the trial court's "failure to go through the two-step filtering test and reliability factors of *Neil vs. Biggers*;" (2) the trial court "denied [him] Fundamental Fairness by not playing video from Double Quick to allow [him] a chance to challenge during trial;" (3) prosecutorial misconduct "by fabricating and altering [his] alibi;" (4) the "prosecutor was so undeveloped and prevented the discovery of necessary facts till one month before second trial that counsel didn't have tools to develop argument;" (5) the victim and investigator were allowed to testify over his "objection to unreliable and untrue prejudice [sic] testimony;" (6) insufficient evidence; (7) "[t]he investigator did not investigate the case properly;" and (8) "[c]onflict of interest due to the fact David L. Tisdell was the Defendants paid attorney on first trial and Defendant was not informed of his being appointed Public Defender on second trial." *Id.* at PageID 999–1000.

The Mississippi Supreme Court denied Phillips' second application for leave on October 14, 2021. *Id.* at PageID 969–70. Of relevance, it found:

> The application is successive. Miss. Code Ann. § 99-39-7. Likewise, the claims were either raised and rejected, or were capable of being decided, in prior proceedings. Miss. Code Ann. § 99-39-21. To merit relief from these procedural bars, the claims must have some arguable basis. *Means v. State*, 43 So. 3d 438, 442 (Miss. 2010). The panel finds Phillips's claims are insufficient to merit relief from the bars.

*Id.*

3

On or about January 4, 2022, Phillips filed a pro se petition for a writ of habeas corpus in the United States District Court for the Northern District of Mississippi. Doc. #1. The petition asserts four grounds for relief: (1) "[t]he trial court erred in failing to grant the appellant motion in limine and by not triggering the Biggers two step inquiry;" (2) "[t]he suggestive in-court identification of [him] by the victim should have triggered the two-step inquiry of Neil v. Bigger;" (3) "[p]rosecutor misconduct by fairicating [sic] and altering defendants alibi causing a denial of direct verdict in first trial;" and (4) "[t]he elements and evidence are insufficient to suport [sic] a conviction." *Id.* at 5–9. After being ordered to respond[2] to the petition and receiving an extension of time to do so,[3] the State filed an answer, asserting that "Ground Three is … procedurally barred from federal habeas review" and Phillips "is not entitled to habeas relief on his [other] claims." Doc. #10 at 9, 14. Phillips filed a reply. Doc. #12.

## II
## Procedural Default

### A. Applicable Law

"A federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Guidry v. Lumpkin*, 2 F.4th 472, 486 (5th Cir. 2021) (alterations omitted). To be valid, a procedural bar must be "adequate," that is, "strictly or regularly followed by the cognizant state court" and "independent of federal law." *Fratta v. Davis*, 889 F.3d 225, 228 (5th Cir. 2018). A petitioner can overcome the procedural bar if he is able to "show cause for the default and actual prejudice, or that a miscarriage of justice will occur if the federal court does not consider the claim." *Gonzales v. Davis*, 924 F.3d 236, 242 (5th Cir. 2019). "Cause for a

---

[2] Doc. #4.

[3] Doc. #8.

procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him, impeded his efforts to comply with the State's procedural rule." *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (cleaned up). To establish prejudice, the petitioner must demonstrate that "but for the error, he might not have been convicted." *Pickeny v. Cain*, 337 F.3d 542, 545 (5th Cir. 2003). "And a miscarriage of justice in this context means that the petitioner is actually innocent of the crime of which he was convicted." *Gonzales*, 924 F.3d at 242.

### B. Application to Ground Three

The Mississippi Supreme Court found Phillips' claim for prosecutorial misconduct—the basis of Ground Three—to be procedurally barred on post-conviction review because (1) it was presented in a successive application and therefore barred under Mississippi Code § 99-39-27;[4] and (2) the claim was capable of being presented on direct appeal[5] and therefore barred on post-conviction review under Mississippi Code § 99-39-21(1). Doc. #11-9 at PageID 969. The Fifth Circuit has "routinely held that Mississippi's post-conviction procedural bars for … successive petitions are independent and adequate state procedural grounds." *Spicer v. Cain*, No. 18-60791, 2021 WL 4465828, at *3 (5th Cir. Sept. 29, 2021). The Fifth Circuit likewise has found that the § 99-39-21 bar on claims "not raised at trial or on direct appeal" is "an independent state ground for rejecting a habeas petitioner's claim in federal court." *Nixon v. Epps*, 111 F. App'x 237, 245 (5th Cir. 2004). So Phillips' claims are procedurally barred unless he shows that something external to him prevented him from properly presenting his claim to the state court and that but

---

[4] While the order cited Mississippi Code § 99-39-7, that statute details the filing of motions for post-conviction relief where § 99-39-27 sets forth the bar on successive post-conviction proceedings.

[5] The Mississippi Supreme Court held that all Phillips' claims "were either raised and rejected, or were capable of being decided, in prior proceedings." Doc. #11-9 at PageID 969. Because the prosecutorial misconduct claim was raised for the first time in Phillips' second application for post-conviction relief, the latter must apply.

for the alleged error he would not have been convicted; or that he is actually innocent of the crimes of conviction.

Phillips has failed to identify any external action that prevented him from presenting his prosecutorial misconduct claim on direct appeal and has not demonstrated any actual prejudice as a result of the imposition of the procedural bar. Further, he has not shown "that he is actually innocent of the offense for which he was convicted" because he has not "establish[ed] through new and reliable evidence that it was more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Reed v. Stephens*, 739 F.3d 753, 767 (5th Cir. 2014) (internal quotation marks omitted). Accordingly, Phillips' Ground Three claim for prosecutorial misconduct is procedurally barred from federal habeas review.

## III
## Merits Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> Congress prohibited federal courts from granting habeas relief unless a state court's adjudication of a claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or the relevant state-court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold. AEDPA also requires federal habeas courts to presume the correctness of state court's factual findings unless applicants rebut this presumption with clear and convincing evidence.

*Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007) (cleaned up).

### A. Grounds One and Two

Because Grounds One and Two both concern the victim's in-court identification of Phillips and the two-step inquiry under *Neil v. Biggers*, the Court will address these grounds together.

6

1. Relevant law

> The Due Process Clause protects against the use of evidence obtained from impermissibly suggestive identification procedures. The admissibility of identification evidence is governed by a two-step test: First, we determine whether the identification procedure was impermissively suggestive, and second, we ask whether the procedure posed a very substantial likelihood of irreparable misidentification. If we answer both questions in the affirmative, the identification is inadmissible. This is known as the *Brathwaite* test, after *Mason v. Brathwaite*, 432 U.S. 98 … (1977).

*United States v. Moody*, 564 F.3d 754, 762 (5th Cir. 2009) (cleaned up). In conducting the analysis, "[r]eliability is the linchpin in determining the admissibility of identification testimony" and the factors to be considered are set out in *Neil v. Biggers*, 409 U.S. 188 (1972). *Brathwaite*, 432 U.S. 98, 114 (1977). "These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Id.*

However, the Supreme Court's decisions on suggestive identification procedures "turn on the presence of state action and aim to deter police from rigging identification procedures, for example, at a lineup, showup, or photograph array." *Perry v. New Hampshire*, 565 U.S. 228, 233 (2012). Thus,

> [w]hen no improper law enforcement activity is involved, … it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt.

*Id.* Where there is no indication of improper conduct, it must be left to the jury to "assess [the] creditworthiness" of eyewitness identification. *Id.* at 245.

7

## 2. Analysis

The Mississippi Court of Appeals accurately set forth the relevant facts:

The record … reflects that at Phillips's first trial, [Suzette] Chambers testified that her attacker "jumped up on her so fast." When asked if she was able to identify her attacker, Chambers answered "No. I was not able to identify him, because he had a mask on." Chambers explained, "All I could see was the eyes, because he had a mask on. So all I could see was the eyes."

Prior to Phillips's second trial …, defense counsel made an oral motion in limine asking the trial court to exclude Chambers's in-court identification of Phillips as her attacker. The State informed the trial court that during the first trial, Chambers stated that she could not identify her attacker because he was wearing a mask and she could only see his eyes. However, the State explained that after Chambers stepped down from the witness stand and left the courtroom, she informed the District Attorney's office and members of the Clarksdale Police Department that upon seeing Phillips's eyes and eyebrow area, Chambers was certain that he was the one who had assaulted her and robbed her at gun point. The State explained that Chambers was sure about Phillips's identification because Chambers had suffered many nightmares reliving the attack. The State argued that if Chambers was able to identify Phillips as her attacker, the jury should be able to determine the weight of her testimony. The State asserted that such in-court identifications are only subject to suppression if it has been determined that the identification has been tainted or was suggestive in any manner. The State also maintained that it never presented Chambers with a photo line-up of suspects.

The trial court denied Phillips's motion in limine, explaining that the in-court identification by Chambers would constitute a prior inconsistent statement and that the jury would be instructed accordingly. The trial court stated that defense counsel would then be allowed to bring up Chambers's prior testimony stating that she could not identify her attacker because he was wearing a mask.

At trial, defense counsel renewed the motion in limine prior to Chambers's testimony. The trial court again ruled that Chambers's testimony constituted "a prior inconsistent statement" and stated that the jury would receive an instruction to that effect.

During Chambers's testimony at the second trial, she stated that her attacker ordered her to give him her purse. Chambers testified that as he spoke to her, "he was looking me dead in the eyes, and I was looking at his eyes." Chambers testified that although her attacker's face was not visible because he was wearing a mask, his eyes and eyebrows were visible. Chambers testified that she could see his eyes and eyebrows "real good, because he was close upon me with the gun pointed in my face." Chambers became emotional as she testified to the following: "I saw those eyes for nights and nights and nights. I couldn't go to

> sleep because of those eyes. For months that went on; I could see those eyes. For months I saw nothing but those eyes looking at me."
>
> The State asked Chambers if she was able to identify her perpetrator on the night of the incident. Chambers responded, "No, I was not able to identify anyone, but I did tell them that it was a kind of medium built, tall, young man. And that was about it, because I didn't really know who it was." The State then asked, "[S]itting here today, are you able to identify the individual that placed a gun in front of your face, asked for your purse, and dragged you until you [released] your purse in the courtroom today?" Chambers answered, "Those eyes. I can never forget those eyes. ... I can never forget those eyes of this man sitting—I could never forget those eyes, because he had those devious looking eyes and those thick eyebrows. I could never forget those eyes looking at me." Chambers then identified Phillips as the man whose eyes and eyebrows she described.

*Phillips*, 303 So. 3d at 81–82 (cleaned up).

Phillips' defense counsel then proceeded to cross examine Chambers, resulting in the following exchange:

> Q: Yes, ma'am. Now do you recall being where you are now about a year ago? And that individual was sitting where he's sitting a year ago. Now, am I correct that that day you did not identify him as the person who assaulted you?
>
> A: Because I did not look at him.
>
> …
>
> A: Because I did not look at him at that time. I looked at him afterwards. And I started crying in this courtroom, and the attorneys had to take me out because I recognized those eyes then. I saw those eyes. I saw them.
>
> Q: Yes, ma'am. But my question – I understand this is upsetting to you, but I've got to get a clear understanding of what happened for the members of the jury. As – today when you pointed and said, that's him, you did not do that the last time we were here —
>
> A: I did not look at him while I was testifying. I never looked at him. I never looked at him.
>
> Q: And I believe in your testimony that you were not able to identify him because he had on a mask. Do you remember that?
>
> A: Yes.

9

> Q: And that was your testimony a year ago?
>
> A: Yes, but when I saw him, those eyes brought back memories because that's what stood out with me because I was – he was right on me. I was right at him, at we were looking at each other dead in the eye.

Doc. #11-4 at PageID 568–69.

On redirect, the State elicited further testimony from Chambers addressing when she identified Phillips:

> Q: Ms. Chambers, I know this is tough for you, but just to reiterate, when did you recognize the eyes of the defendant?
>
> A: When we were in here last time in the courtroom.
>
> Q: Was it during the time that you were on the stand?
>
> A: No, because I never looked at him then.
>
> Q: And were you asked during that time if you could identify him?
>
> A: I don't know if I was even asked that. I don't recall being asked that.
>
> Q: So you stated it was not when you were on the stand.
>
> A: No.
>
> Q: Was it when you were coming in or when you were leaving when you noticed—
>
> A: It was when I was leaving that I noticed.
>
> Q: And at that time, was your testimony over?
>
> A: I don't think my testimony—it was when we—we had a recess or something, and I was sitting there and I was able to see it.

*Id.* at PageID 570.

In considering Phillips' argument that Chambers' "in-court identification was unduly suggestive [such that] the trial court erred by failing to perform the constitutional analysis set forth in *Neil v. Biggers*," the state appellate court correctly set forth and utilized the applicable

10

controlling authority for such claims. *Phillips*, 303 So. 3d at 79. It noted that "the Mississippi Supreme Court had not decided whether *Biggers* applies to an in-court identification not preceded by an impermissibly suggestive pretrial identification;" "the extent to which there were inconsistencies between the eyewitness's pretrial identification and her subsequent in-court identification goes to the weight of the evidence, not to its admissibility;" and "the trial itself affords the defendant adequate protection from the general inherent suggestiveness present at any trial [because t]he defendant receives the full benefit of a trial by jury, presided over by an impartial judge, with representation by counsel, and witnesses subject to oath and cross-examination." *Id.* at 83–84. (cleaned up) (citing *Galloway v. State*, 122 So. 3d 614, 663 (Miss. 2013)). Applying *Galloway*, the state appellate court concluded that "the trial court did not abuse its discretion in denying Phillips's motion in limine" because Chambers "did not participate in a pretrial identification procedure," Phillips "was permitted to cross-examine Chambers regarding inconsistencies in her testimony," and the jury was instructed regarding impeachment of witnesses and identification testimony. *Id.* at 84–85.

Phillips argues that the trial court erred in denying his motion in limine to exclude the victim's in-court identification of him as her attacker and that the circumstances of the identification were so unduly suggestive that the inquiry in *Biggers* was warranted. Doc. #1 at 5–6. But Phillips has not alleged or identified any improper law enforcement conduct which precipitated Chambers' out-of-court identification of him during the first trial to trigger the *Biggers* analysis. Rather, it was up to the jury to determine whether to find her testimony credible. *Perry*, 565 U.S. at 233. Phillips is not entitled to habeas relief based on his first two grounds.

### B. Ground Four

In Ground Four, Phillips asserts that "[t]he elements and evidence are insuffcant [sic] to suport [sic] a conviction" and "[t]he process by which [he] was convicted was fundamentally unfair and the US Constitution requires more." Doc. #1 at 9. Phillips does not present any substantive argument with respect to this ground and does not identify what elements of the crimes were unsupported by the evidence at trial.

#### 1. Relevant law

Under *Jackson v. Virginia*, 443 U.S. 307 (1979), "evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Coleman v. Johnson*, 566 U.S. 650, 654 (2012) (internal quotation marks omitted). These types of claims "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Id.* at 651.

> First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable."

*Id.* "[F]ederal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Id.* at 655 (internal quotation marks omitted).

Under Mississippi law, "[t]he elements of armed robbery are: (1) a felonious taking or attempt to take; (2) from the person or from the presence; (3) the personal property of another; (4) against his will; (5) by violence to his person or by putting such person in fear of immediate

12

injury to his person by the exhibition of a deadly weapon." *Smith v. State*, 250 So. 3d 421, 427–28 (Miss. 2018). And the elements of aggravated assault are: "(1) the defendant attempted to cause or purposely or knowingly caused (2) bodily injury to another (3) with a deadly weapon or other means likely to produce death or serious bodily harm." *Stone v. State*, 94 So. 3d 1078, 1085 (Miss. 2012) (emphasis omitted).

### 2. Analysis

In addition to Chambers' testimony detailed above, the trial consisted of additional testimony from law enforcement and Phillips, summarized by the Mississippi Court of Appeals:

> Investigator Charles Sledge from the Clarksdale Police Department testified that on April 23, 2015, he responded to a call that Chambers had been robbed at gunpoint. During his investigation into Chambers's stolen debit card, Investigator Sledge subpoenaed the First National Bank for the records of her credit card transactions. Investigator Sledge testified that once he received the transactions, he followed-up with the locations where her credit card had been used after the robbery and obtained video footage of these transactions. Investigator Sledge testified that Chambers's debit card had been used at a store on the same evening as the robbery. Upon viewing the surveillance video footage from that store during the time of the debit card transaction, Investigator Sledge observed a man who he identified as Phillips pumping gas into a car at the gas pump. Phillips's girlfriend later identified the car in the video as her car, and she told Investigator Sledge that she and Phillips were the only two people in control of the car. Investigator Sledge also testified that upon searching Phillips's girlfriend's car, he recovered a gun in the trunk of the vehicle.
>
> Investigator Sledge followed-up with Phillips and questioned him about using Chambers's debit card. According to Investigator Sledge, Phillips denied using the debit card on the night of the robbery, but he admitted to using the card the next day, on April 24. Phillips denied robbing Chambers and told Investigator Sledge that he received the card "from a guy named James." The transcript reflects that the jury was able to watch the surveillance video during their deliberations.
>
> … At trial, Phillips denied robbing or assaulting Chambers, and he testified that he was at home in bed on the evening of the robbery. He also denied that he was the man shown on the surveillance video using Chambers's debit card. Phillips admitted to using Chambers's debit card, but he testified that he obtained the debit card from a man named James. Phillips testified that on the morning of April 24, 2015, the day after the robbery, he stopped at a gas station, and a man named

13

> James allowed him to use the debit card to get gas in exchange for Phillips paying James money. Phillips stated he pumped $71 worth of gas into his car, but he only paid James $30. Phillips testified that after he pumped the gas, he "saw an opportunity to take off with the [debit] card, so [he] just took off with it and went on to Memphis," where he attempted to use the card again, but he was unable to do so.

*Phillips*, 303 So. 3d at 86–87. The appellate court found that "[a]fter viewing the evidence in the light most favorable to the prosecution, … sufficient evidence existed to support Phillips's convictions." *Id.* at 87.

This Court must accept all credibility determinations and conflicting inferences in favor of the jury's verdict. *See Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005). Such deference includes the jury's assessment of both direct *and* circumstantial evidence. *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990). Moreover, because the state court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). Phillips has wholly failed to meet this burden as he presents no substantive argument or evidence to support his claims. Given the deferential standard of review this Court must afford the state appellate court's decision and Phillips' failure to carry his burden, this Court cannot conclude that the verdict was objectively unreasonable. Thus, federal habeas relief is not warranted based on Ground Four.

## IV
## Certificate of Appealability

Rule 11 of the Rules Governing § 2254 Proceedings in the United States District Courts requires a court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability ("COA") will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To

obtain a COA on a claim rejected on procedural grounds, a movant must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For cases rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA. *Id.* Based on the *Slack* criteria, the Court finds that a COA should not issue in this case.

## V
## Conclusion

Phillips' petition [1] is **DENIED with prejudice**. A certificate of appealability is **DENIED**. A final judgment will issue separately.

**SO ORDERED**, this 16th day of February, 2023.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**